GANDÍA, PLAINTIFF AND APPELLEE, *v.* PORTO RICO FERTILIZER COMPANY, DEFENDANT AND APPELLANT.

APPEAL from the District Court of San Juan in an Action to Recover Dividends.

No. 2474.—Decided April 24, 1922.

CORPORATION — STOCKHOLDER — PRESUMPTION. — When stock of a corporation is originally recorded in the name of a stockholder, this fact creates a presumption in his favor that he is the real owner of that stock.

ID. — ID. — ASSIGNMENT — DIVIDENDS. — When a corporation relies on a certain

clause of an agreement for refusing to recognize the alleged rights of a stockholder by reason of an assignment of the stock, it is bound by the same clause fixing a right to accrued dividends in the same stockholder.

The facts are stated in the opinion.

*Messrs. C. Coll Cuchí* and *G. Cruzado Silva* for the appellant.

*Mr. José de Guzmán Benítez* for. the appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

In support of a judgment in favor of the complainant the court below in its opinion found that the complainant was the owner of sixty shares of stock of the defendant company and that the complainant was entitled to recover of the defendant the sum of $8,234.06 by reason of dividends declared and undistributed. One of the principal contentions of the appellant was that there was no interrelation between these two findings of the court and that these dividends were not in any way apportioned to, or shown to be the outcome of, the said sixty shares of stock. Likewise appellant maintained that the ownership of the said sixty shares was never in the complainant, but always in the firm of Gandía & Stubbe of which complainant was an equal partner. Appellant also alleged the inconsistent defence that the sixty shares of stock had been assigned by the complainant to Stubbe in the articles of dissolution of Gandía & Stubbe and that hence the dividends had been paid to Stubbe Brothers by reason of evidence presented to the company tending to show the ownership of the sixty shares in said Stubbe Brothers, said evidence consisting in the articles of dissolution of said firm. It is suggested too that the court was in error in ordering the defendant to keep in its stock book a record of the sixty shares in definite favor of the complainant, inasmuch as the evidence tended to show the mediate transfer from Gandía to Stubbe Brothers, and the adverse claimants to the stock were not made parties.

This last question, in point of fact, was attempted first to be raised by demurrer. But the acts of the complainant

tending to show a transfer did not appear on the face of the complaint. At the trial, however, the articles of dissolution were offered in evidence and therein it appears that Gandía agreed that "he will sell his shares to Stubbe" at their par value. Whether we agree with appellee or not in regard to the actual final transfer of the stock, the defendant company ought not to be ordered to keep a record and declare definitely the ownership in one person, when apparently strong evidence was before the said company of an adverse claim. It is true that the stock was never physically assigned nor its par value paid to appellee, but the appellant contends that the words of the articles of dissolution transferred the stock *ipso facto* to Stubbe and left Gandía with a claim for the par value; that the use of the future tense was common to a number of the dissolution articles wherein rights arose in either of the partners. We can see how the appellee might allege a failure of consideration, that this part of the articles of dissolution might be separable and independent, and he might insist that the title remained in him, but on this point before the company should be bound it should not be subjected to the possibility of a suit by the adverse claimants. The assignees, as did the company, might put a different construction on the articles of dissolution and the defendant had a right to insist that the said assignees be given their day in court before the company should be made responsible for the rival claim of the complainant.

We are inclined to agree with the appellant too that there is no mathematical or direct logical relation between the sixty shares and the dividend of $8,234.06. The articles of dissolution show, however, that whatever the origin of the claims before the existence of said articles, therein a specific apportionment of the said $8,234.06 was made to Gandía. The company had the articles of dissolution before it. It relied on them to say that the shares of Gandía had been transferred to Stubbe, and this knowledge, independently of

other matters, did not arise from a remote or indefinite part of the articles of dissolution, but from the very article on which the defendant in part based its right to consider the said sum as having been assigned. The clause in question was as follows:

"*Eighth:* The partners agree upon the following special conditions for the purpose of the liquidation: (*a*) Gandía will sell to Stubbe all of his stock in the Porto Rico Fertilizer Company at par, one-half of all the dividends declared by the said company remaining to the credit of Gandía. (*b*) Gandía may make use of the house known as the cotton factory in Santurce up to the thirty-first of December, 1916, without using it for other purposes than those for which it is now used, paying to Stubbe the rent which Gandía collects for it from J. P. Coats & Co., Ltd. (*c*) The balance resulting after the liquidation in favor of either of the partners will be paid by the debtor in negotiable notes of one thousand dollars each, payable one year after the date of this deed. (*d*) Gandía will remain in charge of the contracts for the premises of the old firm of Gandía & Stubbe without making any compensation whatever to Stubbe."

That the dividends of $8,234.06 had been previously declared, is not questioned, nor that they were declared in favor of the partners or either of them. Therefore, the company was notified by this clause that it had no right to pay the dividends to any one but Gandía, and this independently of the fact that there was other evidence tending to show the same conclusion, as found by the court below.

So far as it has any bearing, we are satisfied from the proof and so find that up to the time of the signing of the articles of dissolution, the said sixty shares belonged to Gandía. They were originally recorded in his name, whatever the consideration or origin of the same, and the burden was on the defendant to show the fact to be otherwise. It would militate against the defendant that it claimed the inconsistent defense that the said sixty shares were transferred from Gandía to Stubbe by the articles of dissolution. There

could be no transfer without ownership and the record shows no other shares that the partners could have had in mind when they agreed on clause eight transcribed above. With the clear presumption of original ownership in his favor as shown from the stock book, from the articles of incorporation and from the amendment thereto, the failure of Gandía to take the stand in his own behalf became unimportant and it is offset in our mind by the similar failure of Stubbe to be a witness. He was shown to be closely identified with the defendant and the latter had it clearly in its power to produce him. Likewise it would have been perfectly legal for the firm by agreement to vest the ownership of sixty shares in each of the partners on incorporating the company.

Having reached the conclusion, as we have said, that the previous ownership of the sixty shares was unimportant, one of the questions most insisted on does not seem to have great importance, but we shall consider it. It was strongly urged that when the Porto Rico Fertilizer Company was formed an agreement was entered into between Gandía & Stubbe on the one side and the Virginia Carolina Chemical Company on the other by which it was stipulated or agreed that 250 shares of the forming company were in Gandía & Stubbe and 250 in the Virginia company and that neither of them nor any of them should sell or transfer without notice to the other. The form of the agreement is not inconsistent with the ownership of part of the shares in Gandía and Stubbe individually. The proof does not satisfy us that the sixty shares in Gandía, sixty in Stubbe and five other shares in other person was a simulation solely for the purpose of incorporation, nor that the origin of these 125 shares was indirectly from the sale of a piece of property in Santurce belonging to Gandía & Stubbe. There was another block of 125 shares belonging to Gandía & Stubbe, susceptible of arising by said transfer of land. Gandía & Stubbe agreed with

the Virginia Carolina Company not to sell or transfer, but we should consider this an agreement as one not to disturb the *status quo,* wherein all the shares under the control of Gandía & Stubbe or either of them should be so continued. Outside of the fact that the court found the paper in dubious form, it is only slight partial evidence of the ownership of the 250 shares in the firm of Gandía & Stubbe and the fact, we find, was shown to be otherwise by the proof we have recited, by the existence of sixty shares in Stubbe and by the acts of the defendant company itself in recognizing an ownership in Stubbe Brothers, an entity distinct from Gandía & Stubbe. At most it would be the Virginia Carolina Chemical Company that might complain, but it was clearly not injured, and the parties acted within the intendment of the alleged stipulation or agreement, no outsider being brought in. The alleged stipulation was what is known as a "pooling arrangement" whereby a close corporation arises and all the stock is kept in the hands of a few persons. 31 Cyc. 912.

The judgment must be reversed in so far as it orders the defendant to carry on its stock and transfer book the sixty shares of the defendant corporation, to consider the plaintiff as one of the stockholders to the extent of the sixty shares, and to pay him whatever dividends are distributed from the profits of the defendant corporation; and otherwise affirmed. This affirmance leaves a judgment against the defendant for $8,234.06 and the costs.

*Affirmed in part.*

Chief Justice Del Toro and Justices Aldrey and Hutchison concurred.

Mr. Justice Franco Soto took no part in the decision of this case.